## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                                )
MURAD ABDEL JABBER FAKHOURI,                     )
                                                )
         Plaintiff,                     )
                                                )
     v.                                       )
                                                )   Case Number: 1:07CV2257 (EGS)
MICHAEL CHERTOFF, Secretary,                     )
U.S. Department of Homeland Security, <u>et al.</u>  )
                                                )
        Defendants.                    )
_____)

**MOTION TO TRANSFER AND FOR ENLARGEMENT OF TIME TO FILE ANSWER**

      Defendants Michael Chertoff, et al., by and through undersigned counsel, hereby move to

transfer this case to the Eastern District of North Carolina pursuant to 28 U.S.C. § 1404(a).

Defendants also request that the Court defer the deadline for their Answer pending resolution of

this motion to transfer.  In accordance with Local Civil Rule 7(m), counsel for Defendants

contacted the <u>pro se</u> Plaintiff to request his position on this motion.  Plaintiff opposes the transfer

and enlargement.  A proposed order and memorandum of points and authorities are attached

hereto.

Dated: February 25, 2008              Respectfully submitted,

                                          /s/
                              JEFFREY A. TAYLOR, D.C. BAR # 498610
                              United States Attorney

                                          /s/
                              RUDOLPH CONTRERAS, D.C. BAR #434122
                              Assistant United States Attorney

　　　/s/ Robin M. Meriweather
ROBIN M. MERIWEATHER, D.C. Bar. # 490114
Assistant United States Attorney
555 Fourth St., N.W.
Washington, D.C.  20530
Phone: (202) 514-7198 Fax: (202) 514-8780
Robin.Meriweather2@usdoj.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                    )
MURAD ABDEL JABBER FAKHOURI,                         )
                                                    )
                    Plaintiff,                       )
                                                    )
          v.                                         )
                                                    )     Case Number: 1:07CV2257 (EGS)
MICHAEL CHERTOFF, Secretary,                          )
U.S. Department of Homeland Security, et al.          )
                                                    )
                    Defendants.                       )
_____)

**<u>MEMORANDUM IN SUPPORT OF MOTION TO TRANSFER</u>**

This case concerns an N-400 application for naturalization filed by Plaintiff Murad

Fakhouri, in which Plaintiff requested that Defendant United States Citizenship and Immigration

Services ("USCIS") make him a citizen of the United States.  Plaintiff argues that Defendants

have failed to adjudicate his application within a reasonable amount of time, and seeks an order

from this Court compelling Defendants to complete the adjudication of his naturalization

application.  <u>See</u> Compl. ¶¶ 15-16.  In accordance with its regulations and Congress's mandate

no N-400 applicant should be granted citizenship status until security investigations have been

performed, USCIS has not yet scheduled Plaintiff's interview, because his name checks are not

complete.  <u>See</u> Declaration of Richard H. Gottlieb, ¶8 (Exh. 1); 8 U.S.C. § 1446(a) (requiring

security investigation); 8 C.F.R. § 335.2(b) (requiring that the results of FBI name checks be

received prior to the citizenship interview).

Although Plaintiff initiated this action in this Court, venue is more appropriate in the

Eastern District of North Carolina.  The only nexus between this District and this case is the fact

that some of the agency officials named as defendants have offices in the District of Columbia.

However, the events giving rise to this complaint — namely, the processing and adjudication of

Plaintiff's I-485 — either have transpired or will occur at the USCIS Charlotte Field Office, which is located in Charlotte, North Carolina.  Charlotte, North Carolina is also the city in which Plaintiff resides.  Accordingly, the Eastern District of North Carolina is a more appropriate forum for this case than this Court, and the interests of justice support transfer.

## STANDARD OF REVIEW

Section 1404(a) permits the Court to transfer this case to "any other district or division where it might have been brought" for the "convenience of parties and witnesses, in the interest of justice."  28 U.S.C. § 1404(a).  A threshold question is whether the case could have been brought in the district to which transfer is sought.  See Stewart Organization v. Ricoh Corp., 487 U.S. 22, 29 (1988) (citing Van Dusen v. Barrack, 376 U.S. 612, 613 (1964)).  The Court then must engage in a case by case analysis and balance the private interests of the parties with public interests such as efficiency and fairness.  Id. at 29; Abusadeh, 2007 WL 2111036, at *3.  The moving party bears the burden to establish that it is proper to transfer the case.  See Southern Utah, 315 F. Supp. 2d at 86;  Trout Unlimited v. United States Dep't of Agriculture, 944 F.Supp. 13, 16 (D.D.C. 1996) (citing Air Line Pilots Ass'n v. Eastern Air Lines, 672 F.Supp. 525, 526 (D.D.C. 1987) (citations omitted).

## ARGUMENT

## I.     THE COURT SHOULD TRANSFER THE CASE TO THE EASTERN DISTRICT OF NORTH CAROLINA.

This case is governed by the general venue statute, 28 U.S.C. § 1391, which establishes default rules for venue that apply to federal lawsuits where the underlying statutes do not specify their own venue rules.  See 28 U.S.C. § 1391(a), (b), and (e) (each applying "except as otherwise provided by law.").  Section 1391 identifies three possible bases for venue for claims against federal government officials or agencies: (1) where a defendant "resides;" (2) the district where

"a substantial part of the events or omissions giving rise to the claim occurred;" or (3) where "the plaintiff resides, if no real property is involved in the action."  28 U.S.C. § 1391(e).  Plaintiff appears to rely on the first prong of this test.  He alleges that venue is proper in this Court because the agency heads named as Defendants have offices in the District of Columbia.  See Compl. ¶ 8.

When a plaintiff bases its venue arguments solely on federal agency defendants' presence in Washington D.C., the venue challenge should be examined  "very closely."  Cameron v. Thornburgh, 983 F.2d 253, 256 (D.C. Cir. 1993).  That close scrutiny has led courts in this District to invoke their transfer authority pursuant to 28 U.S.C. § 1404(a) and transfer cases to a district with a closer nexus to the parties' dispute.  See, e.g., Cameron, 983 F.2d at 256 (ruling Washington, D.C. was not the proper venue because the sole connection to Washington, D.C. was the inclusion of the Director of the Federal Bureau of Prisons and the Attorney General in their official capacities); Abusadeh v. Chertoff, 2007 WL 2111036, at *6-*9 (D.D.C. July 23, 2007) (transferring mandamus action seeking adjudication of naturalization application and petition to replace alien card to Southern District of Texas because that was where the application was being adjudicated); Fayyaz v. Dep't of Homeland Security, No. 06-2016, (D.D.C. Oct. 25, 2007) (unpublished Order) (transferring mandamus action concerning I-485 to the Southern District of Texas because that is where plaintiff resided and the district in which the USCIS office with jurisdiction over their applications was located) (attached as Exh. 2 hereto); Poliakova v. Gonzales, No. 07- 1210 (D.D.C. Dec. 17, 2007) (Order attached hereto as Exh. 3) (transferring mandamus action concerning I-485 to Southern District of Florida for the same reason); Rosales v. United States, 477 F. Supp.2d 213, 215-17 (D.D.C. 2007) (transferring case against federal agency to district in which the challenged events took place); Southern Utah

<u>Wilderness Alliance v. Norton</u>, 315 F. Supp.2d 82, 86-89 (D.D.C. 2005) (concluding environmental case should be transferred to Utah where D.C. officials only set general policies and did not make specific decisions being appealed); <u>Joyner v. District of Columbia</u>, 267 F. Supp.2d 15, 20-21 (D.D.C. 2003) (holding that the case's only connection to Washington, D.C. was the situs of named federal government defendants and transferring to a district with which the case had several connections).  Otherwise, "[b]y naming high government officials as defendants, a plaintiff could bring suit here that properly should be pursued elsewhere." <u>Cameron</u>, 983 F.2d at 256.   The fact that some of the Defendants are high government officials with offices in the District of Columbia does not establish a sufficient connection to this District to make this an appropriate forum.

**A.    Plaintiff Could Have Brought This Case in the Eastern District of North Carolina Because His Claim Arose in That Jurisdiction and He Resides There.**

Plaintiff clearly could have brought this case in the Eastern District of North Carolina. As noted *supra*, venue is proper in the district where: (1) the defendant resides; (2) a substantial part of the events or omissions giving rise to the claim occurred; or (3) the plaintiff resides if no real property is involved in the action.  *See* 28 U.S.C. § 1391(e).  Plaintiff resides in the Eastern District of North Carolina.  <u>See</u> Compl. ¶ 2.  Further, a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in the Eastern District of North Carolina, because his application is pending in the USCIS Charlotte Field Office, which is located in Charlotte, North Carolina.  <u>See</u> Gottlieb Decl., ¶8.  In addition, the Charlotte Field Office will complete the adjudication of Plaintiff's application once USCIS has completed its review of his eligibility for citizenship; therefore any alleged delay in the processing of Plaintiff's application is a matter related to the USCIS Charlotte Field Office.  <u>See id.</u> ¶¶ 8-9.  The Charlotte Field Office is the

office at which Plaintiff has submitted his fingerprints, and that has responded to Plaintiff's inquiries regarding the status of his application.  See Compl. ¶¶ 11, 13.  In sum, the adjudication at issue in this action is being conducted by USCIS staff located in the Eastern District of North Carolina, making venue proper in that court under 28 U.S.C. § 1391.  See Abusadeh, 2007 WL 2111036, at * 6 (concluding venue was proper in Southern District of Texas because naturalization application was being adjudicated there).

    **B.    The Private Interests Favor Transfer to the Eastern District of North Carolina.**

    The private interests favor transfer.  The factors courts consider when assessing those interests include: Plaintiff's choice of forum, Defendants' choice of forum, whether the claim arose elsewhere, convenience of the parties, convenience of the witnesses, and ease of access to sources of proof.  See Trout Unlimited, 944 F.Supp. at 16 (citation omitted).  Although courts generally accord substantial deference to a plaintiff's choice of forum, that deference is lessened when the forum chosen is not the plaintiff's home forum.  See Shawnee Tribe v. United States, 298 F.Supp.2d 21, 24 (D.D.C. 2002) (citing Piper Aircraft Co. v. Reyno, 454 U.S. 235 (1981)).  Courts also apply less deference when the chosen forum has an inadequate nexus to the events in the case.  See Southern Utah Wilderness Alliance, 315 F. Supp.2d at 86.

    1.    Plaintiff's Choice of Forum Deserves Little Deference.

    Plaintiff's choice of forum deserves little deference because he does not reside in this District, and because this District lacks meaningful ties to the controversy.  Plaintiff resides in Charlotte, North Carolina.  See Compl. ¶ 2. As noted, the Charlotte Field Office is charged with adjudicating Plaintiff's naturalization application.  See Gottlieb Decl. ¶ 8.  Thus federal officials in the Eastern District of North Carolina will make the final decision regarding that application, and any intermediate decisions made during that adjudicatory process.  Accordingly, this case is

similar to other cases in which courts have found that the private interests favor transfer because the "primary issue in th[e] case" concerns a decision made by an agency field office, and not headquarters.  Southern Utah Wilderness Alliance, 315 F. Supp.2d at 87; see, e.g., Rosales, 477 F. Supp. 2d at 216; Shawnee Tribe, 298 F. Supp.2d at 24 (transferring and noting that GSA field offices were "actively involved" in decision at issue and the decision-making process was not "substantially focused" in Washington, D.C.); Sierra Club v. Flowers, 276 F.Supp. 62, 67 68 (D.D.C. 2003) (transferring case because federal officials in Florida made the relevant decision and officials in Washington, D.C. were not involved in the decision making process); Airport Working Group of Orange County, Inc. v. United States Dep't of Defense, 226 F. Supp.2d 227, 230-31 (D.D.C. 2002) (transferring because connection to DC was "attenuated" where D.C. officials were not actively involved in challenged decision).

It is true that some of the Defendant officials work for agencies with offices in the District of Columbia.  See Compl. ¶ 8.  However, that does not make this Court the appropriate forum.  Those officials, and the agency headquarters, do not have an active role in the decision-making process concerning Plaintiff's application.  Accordingly, the fact that those officials "reside" in the District of Columbia does not control the venue analysis.  See Shawnee Tribe, 298 F. Supp. 2d at 25 (finding venue appropriate where field office was located despite involvement of "some officials. . . who work in the Washington, DC area").  Instead, the relevant factor is that the officials who will adjudicate Plaintiff's application are in the USCIS *Charlotte* District Office.

2.    <u>Defendants' Choice of Forum Would Place This Case in a District With Strong Connections to Plaintiff's Case.</u>

The Court next considers Defendants' choice of forum. Defendants have legitimate reasons for seeking transfer. The Eastern District of North Carolina is where Plaintiff resides and is the jurisdiction that is home to the USCIS Charlotte Field Office. The Charlotte Field Office has the strongest connection to the case, since that office is adjudicating Plaintiff's application for naturalization. Gottlieb Decl. ¶ 8. Moreover, the Eastern District of North Carolina is the Court that will have jurisdiction if Plaintiff's naturalization application remains pending more than 120 days after he has been "examined" by USCIS. <u>See</u> 8 U.S.C. § 1447(b) (providing that the district court for the district in which an applicant resides has jurisdiction to adjudicate a pending naturalization application or remand to USCIS if more than 120 days have passed since the applicant was examined).

**C.    Other Compelling Reasons Support Transfer of Venue to the Eastern District of North Carolina**.

There are other compelling reasons to transfer this case to the Eastern District of North Carolina. Since this case involves activities taking place in Charlotte, North Carolina, there is local interest in resolving it there. <u>See</u> <u>Schmidt v. American Institute of Physics</u>, 322 F. Supp.2d 28, 36 (D.D.C. 2004) (holding that cases should be resolved in the locale in which they arise); <u>Abusadeh</u>, 2007 WL 2111036 at *8 (transferring case to jurisdiction where USCIS field office was located because of that district's interest in resolving the dispute). As noted, the Eastern District of North Carolina is the home jurisdiction of the Charlotte Field Office, which is charged with and is responsible for adjudicating Plaintiff's pending application, and also is the district in which Plaintiff resides. That also makes the Eastern District of North Carolina a more convenient jurisdiction in which to litigate this case because Plaintiff, the people directly

7

involved in adjudicating his application, and the documents related to the case are located in North Carolina.  <u>See</u> Gottlieb Decl. ¶ 8.

>    **D.    Transfer Would Serve the Public Interest.**

The public interest also favors transfer.  The relevant considerations include: the transferee's familiarity with governing laws, relative congestion of the calendars of the potential transferee and transferor courts, and local interests in deciding local controversies at home.  <u>See Trout Unlimited</u>, 944 F.Supp. at 16 (citation omitted); <u>Airport Working Group of Orange County, Inc.</u>, 226 F. Supp.2d at 229.  Since this action concerns federal law, the Eastern District of North Carolina is as familiar with the applicable law as the District of Columbia.

In addition, there is no evidence that the Eastern District of North Carolina's docket is significantly more congested than the District of Columbia's docket.  <u>See Trout Unlimited v. United States Dep't of Agriculture</u>, 944 F.Supp. at 16; <u>see</u> <u>also</u> Exh. 4 (spreadsheet demonstrating caseload of both districts).  The Eastern District of North Carolina had 1,836 pending civil cases between September 30, 2005 and September 30, 2006, whereas this Court had 4,114 pending civil cases during that period.  <u>See</u> Exh. 4.  The median time from filing to trial for civil cases was 22 months in the Eastern District of North Carolina and 37 months in this Court.  Accordingly, both factors weigh in favor of transferring this case to the Eastern District of North Carolina.

The Court's analysis in <u>Abusadeh v. Chertoff</u> is instructive.  There, as here, the Plaintiff filed a mandamus complaint seeking to compel USCIS to complete its adjudication of a pending naturalization application.  <u>See</u> 2007 WL 2111036 at *2.  The Plaintiff's application was pending in a local USCIS field office in Texas.  <u>See</u> <u>id</u>. at *6.  Plaintiff filed suit in this District, and named agency officials with offices in Washington, D.C. as defendants.  <u>See</u> <u>id.</u>  District Judge

Kollar-Kottelly concluded that Abusadeh's choice of forum was entitled to little deference because there were no meaningful ties between this District and pending immigration applications being adjudicated by a USCIS field office outside Washington, D.C.  See id. at *6-*8.  Further, the public interests favored transfer because both districts were equally familiar with the applicable law but the Southern District of Texas had a "superior interest in addressing the instant controversy because 'there is a local interest in having localized controversies decided at home.'"  Id. at *8.  The same is true with respect to the Eastern District of North Carolina here.

## II.     THE DEADLINE FOR DEFENDANTS' ANSWER SHOULD BE DEFERRED PENDING RESOLUTION OF THE TRANSFER MOTION.

Defendants also move, pursuant to Federal Rule of Civil Procedure 6(b)(1), that the deadline for submitting their answer or other response to Plaintiff's complaint be deferred pending resolution of this motion to transfer.  Defendants' answer currently is due February 25, 2008.  Defendants request that their answer be due no sooner than 15 days after the Court issues an order resolving the motion to transfer venue.  If the Court grants Defendants' motion and transfers the case, the Eastern District of North Carolina will determine when Defendants' answer shall be due.  If the Court denies the motion, Defendants would submit their answer or other response within 15 days of the Court's order.

There is good cause to enlarge this deadline.  Defendants anticipate that they will file a dispositive motion pursuant to Federal Rule 12(b), in lieu of filing an answer.  However, the Court will have to resolve the instant motion to transfer before determining whether to reach the merits of that dispositive motion.  Further, if this case is transferred to the Eastern District of North Carolina, the undersigned will not be counsel for Defendants, and the United States Attorney's Office for the Eastern District of North Carolina will assume responsibility for the case.  The Assistant United States Attorney from that office will need time to become familiar

with the case once the file is received and the precedent from that Court and the Fourth Circuit

(rather than the D.C. Circuit precedent that would control this case). Accordingly, deferring the

deadline for Defendants' answer pending resolution of the motion to transfer would promote

efficiency and conserve resources.

## CONCLUSION

For the foregoing reasons, this Court should GRANT Defendants' motion and transfer

venue to the Eastern District of North Carolina.

Dated: February 25, 2008                Respectfully submitted,


      /s/                                         
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


      /s/                                         
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney


      /s/ Robin M. Meriweather                   
ROBIN M. MERIWEATHER, D.C. Bar. # 490114
Assistant United States Attorney
555 Fourth St., N.W.
Washington, D.C. 20530
Phone: (202) 514-7198 Fax: (202) 514-8780
Robin.Meriweather2@usdoj.gov

*OF COUNSEL:*

    Toinette Mitchell
    Associate Regional Counsel
    Department of Homeland Security, U.S. Citizenship and Immigration Services

**CERTIFICATE OF SERVICE**

I hereby certify that I caused a copy of the foregoing to be filed through the Court's

Electronic Case Filing System, and served via first class mail, postage prepaid, addressed to:

Murad Abdel Jabber Fakhouri
7027 Folger Drive
Charlotte, NC 28270

_____/s/ Robin M. Meriweather_____
ROBIN M. MERIWEATHER

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                        )
MURAD ABDEL JABBER FAKHOURI,            )
                                        )
            Plaintiff,                  )
                                        )
        v.                              )
                                        )    Case Number: 1:07CV2257 (EGS)
MICHAEL CHERTOFF, Secretary,            )
U.S. Department of Homeland Security, et al.  )
                                        )
            Defendants.                 )
_____)

**ORDER**

Upon consideration of Defendants' Motion to Transfer Venue, it is this _____ day of

_____, 2008, it is

ORDERED that Defendants' Motion be, and hereby is, granted;

____    IT IS FURTHER ORDERED that this case be, and hereby is, TRANSFERRED to

the Eastern District of North Carolina;

____    IT IS FURTHER ORDERED that the deadline for Defendants' Answer shall be

extended pending resolution of the motion to transfer, and that the Answer shall

be due no sooner than 15 days after this Court resolves that motion.

SO ORDERED.


                        _____
                        United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA

|  |  |
|---|---|
| MURAD ABDEL JABBER FAKHOURI ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No:  1:07-CV-02257 |
| ) | |
| MICHAEL CHERTOFF, as Secretary of the ) | |
| Department of Homeland Security, U.S. ) | |
| Department of Homeland Security, 2100 2nd ) | |
| SW Washington, D.C. 20593; ) | |
| ) | |
| EMILIO T. GONZALES, as Director of the ) | |
| United States Citizenship and Immigration ) | |
| Services; 20 Massachusetts Avenue, NW ) | |
| Washington, D.C. 20529; ) | |
| ) | |
| EVELYN UPCHURCH, as Director of the ) | |
| Texas Service Center of United States ) | |
| Citizenship and Immigration Services, ) | |
| USCIS TSC, 4141 St. Augustine Rd. ) | |
| Dallas, TX 75227; ) | |
| ) | |
| ROBERT S. MUELLER, III, as Director ) | |
| of the Federal Bureau or Investigation, ) | |
| J. Edgar Hoover Building, 935 ) | |
| Pennsylvania Avenue, NW Washington, ) | |
| D.C. 20535-0001 ) | |
| Defendants. ) | |

## DECLARATION OF RICHARD H. GOTTLIEB

I, Richard H. Gottlieb, hereby declare:

I am the Field Office Director, Charlotte Field Office for the United States

Citizenship and Immigration Services (USCIS) in the Department of Homeland Security

(DHS).  I oversee the adjudication of applications for benefits including applications for

naturalization and adjustment of status.  I have been employed as an officer of USCIS,

1

including its predecessor, the former U.S. Immigration and Naturalization Service, since

November 1976. In 2003, I was promoted to my current position of Field Officer

Director. In that capacity and based upon reasonable inquiry and my knowledge,

information and belief, I state the following:

(1)     When a lawful permanent resident alien applies for naturalization, USCIS

conducts several forms of security and background checks to ensure that the alien is

eligible for the benefit and that he or she is not a risk to national security or public safety.

In addition to record checks against DHS's own immigration systems, these background

checks currently include (a) a Federal Bureau of Investigation (FBI) fingerprint check for

relevant criminal history records on the alien (e.g., arrests and convictions); (b) a check

against the DHS-managed Interagency Border Inspection System (IBIS) that contains

records and "watch list" information from more than twenty federal law enforcement and

intelligence agencies; and (c) an FBI name check, which is run against FBI investigative

databases containing information that is not necessarily revealed by the FBI's fingerprint

check or IBIS. IBIS includes, but is not limited to, information related to persons who

are wanted or under investigation for serious crimes or suspected of terrorism-related

activity. No immigration benefit (e.g., adjustment of status, naturalization/U.S.

citizenship) is granted unless and until all the above-required background checks have

been completed and resolved.

(2)     These law enforcement checks have revealed significant derogatory

information on alien applicants for immigration benefits, including applicants seeking

naturalization, which has resulted in the alien being found ineligible for the benefit and

USCIS's denial of the application. In many instances, the disqualifying information on

the alien has been discovered as a result of the IBIS or FBI name checks, but it has not been revealed by a fingerprint check alone.

(3)    If a background or security check reveals verified derogatory information on the alien (i.e., a positive result), the USCIS works with other divisions of DHS and other law enforcement and intelligence agencies, as necessary, to obtain all available information concerning the derogatory record. Depending on the information, DHS/ICE may place the alien in immigration proceedings to remove him or her from the United States.

(4)    Although the alien's file may show that an FBI fingerprint check was performed, the fingerprint checks frequently do not reveal the types of derogatory information described above, particularly when it is not information that has resulted in an arrest or criminal conviction. For example, persons on a "watch list" who are suspected of terrorist activity will not necessarily be identified through an FBI fingerprint check, but could be identified through an IBIS record check or an FBI name check of investigation databases.

(5)    It would be unconscionable and potentially risk the safety and security of the nation for USCIS to grant United States citizenship without ensuring that the government's law enforcement databases do not contain verified derogatory information about the alien. With naturalization status, a person who is a risk to the public or the nation's security could obtain work in sensitive industries and travel on transportation carriers more easily.

(6)    USCIS initiated the FBI name checks request on the applicant on or about November 23, 2005. The FBI processed the name checks on or about November 28, 2005. The FBI name checks result is pending.

(7)    FBI fingerprint checks of the applicant were initiated on or around December 29, 2005, in conjunction with his application for naturalization. USCIS received the results of the fingerprint checks from the FBI on or around December 30, 2005.

(8)    The applicant supplied his address on his application for naturalization: 7027 Folger Drive, Charlotte, NC 28270. As such, the applicant's file is at the Charlotte Field Office, and the application will be adjudicated there.

(9)    The applicant has not been interviewed on his application for naturalization as his name checks remain pending. *See*, 8 C.F.R. §335.2(b). Upon receipt of the FBI name check results and assuming that no adverse information is disclosed, the applicant will be scheduled for a naturalization interview.

I declare under penalty of perjury that the foregoing is true and correct. Executed on the 14th day of February in the year of 2008.

_____
Richard H. Gottlieb
Field Officer Director
Charlotte Field Office
U.S. Citizenship and Immigration Services
U.S. Department of Homeland Security

4

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| MOHAMMAD FAYYAZ and GIZELA FAYYAZ, <br><br> Plaintiffs, <br><br> v. <br><br> DEPARTMENT OF HOMELAND SECURITY, et al., <br><br> Defendants. | Civil Action 06-02016 (HHK) |

**ORDER OF TRANSFER**

Before the court is the motion of defendants to transfer or, in the alternative, to dismiss [#5]. Upon consideration of the motion, the opposition thereto, and the record of this case, the court concludes that the motion to transfer this action to the Southern District of Texas should be granted. The Southern District of Texas is the more appropriate venue for this action because plaintiffs reside in Houston, Texas, the United States Citizenship and Immigration Services Office with jurisdiction over plaintiffs' adjustment application is there, and plaintiffs' alleged harm occurred there.

Accordingly, it is this 25th day of October, 2007, hereby

**ORDERED** that the Clerk of the Court shall effect the transfer of this action to the Southern District of Texas.

Henry H. Kennedy, Jr.
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| NATALIA V. POLIAKOVA, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 07-1210 (RCL) |
| | § | |
| EMILIO T. GONZALEZ, DIRECTOR | § | |
| UNITED STATES CITIZENSHIP AND | § | |
| IMMIGRATION SERVICES (USCIS), | § | |
| MICHAEL CHERTOFF, SECRETARY, | § | |
| UNITED STATES DEPARTMENT OF | § | |
| HOMELAND SECURITY, | § | |
| ROBERT S. MUELLER, DIRECTOR, | § | |
| FEDERAL BUREAU OF INVESTIGATION, | § | |
| LINDA SWACINA, DIRECTOR, MIAMI | § | |
| DISTRICT OFFICE, USCIS | § | |
| | § | |
| *Defendants*. | § | |

## <u>ORDER</u>

Upon consideration of Defendants' Motion [11] to Transfer Venue and for Enlargement of

Time to File Answer, it is this 17th day of December, 2007,

ORDERED that Defendants' Motion be, and hereby is, granted, for the reasons stated well in

Defendants' response to Plaintiff's sur-reply; it is further hereby

ORDERED that this case be, and hereby is, TRANSFERRED to the Southern District of Florida;

it is further hereby

ORDERED that Defendants' Answer or other response to the complaint shall be due no sooner

than 15 days after the Southern District of Florida dockets the case in that district.

SO ORDERED.


Signed by United States District Judge Royce C. Lamberth on December 17, 2007.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| NATALIA V. POLIAKOVA, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 07-1210 (RCL) |
| | § | |
| EMILIO T. GONZALEZ, DIRECTOR | § | |
| UNITED STATES CITIZENSHIP AND | § | |
| IMMIGRATION SERVICES (USCIS), | § | |
| MICHAEL CHERTOFF, SECRETARY, | § | |
| UNITED STATES DEPARTMENT OF | § | |
| HOMELAND SECURITY, | § | |
| ROBERT S. MUELLER, DIRECTOR, | § | |
| FEDERAL BUREAU OF INVESTIGATION, | § | |
| LINDA SWACINA, DIRECTOR, MIAMI | § | |
| DISTRICT OFFICE, USCIS | § | |
| | § | |
| *Defendants.* | § | |

**RESPONSE TO PLAINTIFF'S SURREPLY**

This case presents a straightforward venue question: whether a mandamus complaint which seeks an order compelling an agency to complete its adjudication of an adjustment of status application should be transferred to the district in which such adjudication will occur and in which the plaintiff resides. Two members of this Court have addressed this issue, and both concluded that the district in which the United States Customs and Immigration Services ("USCIS") office or service center that will adjudicate the application is located is a more appropriate forum than the District of Columbia. See Abusadeh v. Chertoff, 2007 WL 2111036, at *6-*9 (D.D.C. July 23, 2007) (transferring mandamus action seeking adjudication of adjustment of status application to Southern District of Texas because that was where the application was being adjudicated); Fayyaz v. Dep't of Homeland Security, No. 06-2016 (D.D.C. Oct. 25, 2007) (unpublished Order) (transferring mandamus action concerning I-485 to the Southern District of Texas because that is where plaintiffs resided and the district in which

the USCIS office with jurisdiction over their applications was located) (attached as Exh. 3 to Dkt. Entry 19). Plaintiff has not cited a single case holding that a mandamus action seeking to compel field office employees to grant relief should instead be heard in the district in which the Director of an agency is located, and Defendants are aware of none.

The Chief of Staff of the USCIS Miami District Office, Maria Aran, has twice testified under penalty of perjury that the Miami District Office is responsible for adjudicating Plaintiff's adjustment of status application, and is the office that will grant or deny the application. See Dkt. Entry 11 at Exh. 1; Dkt. Entry 19 at Exh. 1. Plaintiff's unfounded speculation that the adjustment application was or may be referred to Washington — which Ms. Aran has specifically rebutted — does not come close to overcoming the presumption of good faith accorded to Ms. Aran's testimony. Indeed, the notion that Plaintiff is better suited than USCIS to opine on where the adjudication will occur is what "strains credibility," not Defendants' arguments. Surreply at 3 (Dkt. Entry 22).

Plaintiff's adjustment of status application is the only application whose adjudication the complaint seeks to compel. See Compl. at 13 (prayer for relief). Plaintiff repeats that prayer for relief in the surreply. See Surreply at 6 (Dkt. Entry 22). Thus, it is of no moment that one of the other immigration applications Plaintiff filed may have been referred to USCIS headquarters in Washington D.C. before it was granted.[1] The salient point is that the adjustment application has never been transferred to Washington, D.C., and will be adjudicated by personnel at the Miami District Office.

---

[1] The email communications Plaintiff submitted state only that a specific I-131 application "was relocated to Central Office Washington," and do not address Plaintiff's entire "file" or the I-485 application. See Dkt. Entry14. That I-131 was filed in December, 2006 — three years after Plaintiff filed the I-485. See Aran Decl. ¶ 5 (Exh. 1 to Dkt. Entry 19). The reasons for that transfer are irrelevant, as that request for a travel document was approved and is not at issue in this case.

2

Nor does it matter where the FBI agent(s) conducting Plaintiff's background checks may be physically located.  The FBI does not adjudicate adjustment of status applications, and will forward the results of its investigation to USCIS.  Thus, "the fact that the FBI . . . may play a role in the processing of Plaintiff's application . . . does not alter the fact that the ultimate decision on Plaintiff's application for naturalization . . . will be made" at the Miami District Office. Abusadeh, 2007 WL 2111036, at *7.

Finally, Plaintiff's suggestion that her choice of forum is entitled to significant deference is misguided.  See Surreply at 3 (Dkt. Entry 22).  The fact that Plaintiff resides in the Southern District of Florida reduces the deference that might otherwise apply to her choice of the District of Columbia as a forum.  See Shawnee Tribe v. United States, 298 F. Supp. 2d 21, 24 (D.D.C. 2002) (citing Piper Aircraft Co. v. Reyno, 454 U.S. 235 (1981)).  Moreover, for the reasons discussed supra, this District lacks "meaningful ties" to the controversy, because the actions Plaintiff seeks to compel will occur in the Southern District of Florida.  Shawnee Tribe, 298 F. Supp. 2d at 24.  The lack of any significant connection between the District of Columbia and the adjudicatory decisions at issue in this case further diminishes the deference given to Plaintiff's choice.  See id.;  Southern Utah Wilderness Alliance v. Norton, 315 F. Supp. 2d 82, 86-89 (D.D.C. 2005); Shawnee Tribe, 298 F. Supp. 2d at 24.

In sum, there is no material difference between this case and Abusadeh, Fayyez, and the numerous cases involving the activities of other agencies' field offices.  It should be transferred because Washington, D.C.- based officials will not play an "active or significant" role in the decision-making process.  Sierra Club v. Flowers, 276 F. Supp. 62, 67-68 (D.D.C. 2003) (transferring case because federal officials in Florida made the relevant decision); Airport Working Group of Orange County, Inc. v. United States Dep't of Defense, 226 F. Supp. 2d 227,

230-31 (D.D.C. 2002) (transferring because connection to DC was "attenuated" where D.C.

officials were not actively involved in challenged decision).  The Southern District of Florida is

the home forum of Plaintiff and the USCIS Miami District Office.  It is thus a more appropriate

venue than this Court.

Dated:  December 14, 2007                          Respectfully submitted,


                                        _____/s/_____
                                        JEFFREY A. TAYLOR, D.C. BAR # 498610
                                        United States Attorney


                                        _____/s/_____.
                                        RUDOLPH CONTRERAS, D.C. BAR #434122
                                        Assistant United States Attorney


                                        _____/s/ Robin M. Meriweather_____.
                                        ROBIN M. MERIWEATHER, D.C. Bar. # 490114
                                        Assistant United States Attorney
                                        555 Fourth St., N.W.
                                        Washington, D.C.  20530
                                        Phone: (202) 514-7198 Fax: (202) 514-8780
                                        Robin.Meriweather2@usdoj.gov

**Of Counsel:**

SHERI GLASER
Trial Attorney
U.S. Department of Justice Civil Division
Office of Immigration Litigation

SYLVIA ALONSO
Associate Counsel
United States Citizenship and Immigration Services
Miami, Florida

# U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE

| | | 12-MONTH PERIOD ENDING SEPTEMBER 30 | | | | | | Numerical Standing | |
|---|---|---|---|---|---|---|---|---|---|
| **NO. CAROLINA EASTERN** | | 2006 | 2005 | 2004 | 2003 | 2002 | 2001 | | |
| OVERALL CASELOAD STATISTICS | Filings* | 1,878 | 2,088 | 2,216 | 2,136 | 2,032 | 1,941 | U.S. | Circuit |
| | Terminations | 2,085 | 2,008 | 2,021 | 1,917 | 1,915 | 1,896 | | |
| | Pending | 1,836 | 1,986 | 1,950 | 1,775 | 1,569 | 1,435 | | |
| | % Change in Total Filings — Over Last Year | | -10.1 | | | | | 76 | 9 |
| | % Change in Total Filings — Over Earlier Years | | | -15.3 | -12.1 | -7.6 | -3.3 | 57 | 5 |
| | Number of Judgeships | 4 | 4 | 4 | 4 | 4 | 4 | | |
| | Vacant Judgeship Months** | 9.0 | 6.9 | 12.0 | 21.6 | 24.0 | 20.0 | | |
| ACTIONS PER JUDGESHIP | FILINGS — Total | 469 | 522 | 555 | 534 | 509 | 485 | 32 | 2 |
| | FILINGS — Civil | 316 | 360 | 375 | 379 | 352 | 380 | 49 | 5 |
| | FILINGS — Criminal Felony | 129 | 136 | 154 | 128 | 123 | 105 | 12 | 1 |
| | FILINGS — Supervised Release Hearings** | 24 | 26 | 26 | 27 | 34 | - | 39 | 6 |
| | Pending Cases | 459 | 497 | 488 | 444 | 392 | 359 | 24 | 1 |
| | Weighted Filings** | 505 | 550 | 582 | 552 | 553 | 489 | 27 | 1 |
| | Terminations | 521 | 502 | 505 | 479 | 479 | 474 | 24 | 1 |
| | Trials Completed | 18 | 18 | 17 | 13 | 19 | 19 | 50 | 5 |
| MEDIAN TIMES (months) | From Filing to Disposition — Criminal Felony | 8.5 | 8.3 | 7.7 | 7.6 | 7.5 | 7.0 | 41 | 5 |
| | From Filing to Disposition — Civil** | 12.5 | 11.7 | 10.8 | 10.2 | 9.5 | 9.3 | 82 | 9 |
| | From Filing to Trial** (Civil Only) | 22.0 | 23.0 | 20.8 | - | 28.0 | 23.0 | 33 | 5 |
| OTHER | Civil Cases Over 3 Years Old** — Number | 61 | 52 | 33 | 30 | 42 | 40 | | |
| | Civil Cases Over 3 Years Old** — Percentage | 4.7 | 3.5 | 2.4 | 2.3 | 3.6 | 3.7 | 34 | 4 |
| | Average Number of Felony Defendants Filed Per Case | 1.3 | 1.2 | 1.2 | 1.2 | 1.3 | 1.3 | | |
| | Jurors — Avg. Present for Jury Selection | 35.95 | 29.75 | 28.91 | 28.98 | 28.27 | 28.04 | | |
| | Jurors — Percent Not Selected or Challenged | 21.7 | 20.0 | 12.7 | 13.9 | 21.0 | 11.2 | | |

| **2006 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE** | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
| Civil | 1264 | 195 | 48 | 425 | 43 | 22 | 22 | 155 | 87 | 49 | 171 | - | 47 |
| Criminal* | 516 | - | 159 | 29 | 181 | 42 | 24 | 8 | 14 | 30 | 5 | 6 | 18 |

\* Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings "By Nature of Offense" do not.
\*\* See "Explanation of Selected Terms."

# U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE

| DISTRICT OF COLUMBIA | | | 12-MONTH PERIOD ENDING SEPTEMBER 30 | | | | | | Numerical Standing | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | 2006 | 2005 | 2004 | 2003 | 2002 | 2001 | U.S. | Circuit |
| OVERALL CASELOAD STATISTICS | Filings* | | 2,947 | 3,383 | 3,121 | 3,461 | 3,382 | 3,377 | U.S. | Circuit |
| | Terminations | | 3,458 | 3,305 | 3,365 | 3,101 | 3,159 | 3,291 | | |
| | Pending | | 4,114 | 4,634 | 4,422 | 4,656 | 4,338 | 4,151 | | |
| | % Change in Total Filings | Over Last Year | -12.9 | | | | | | 84 | - |
| | | Over Earlier Years | | | -5.6 | -14.9 | -12.9 | -12.7 | 69 | - |
| | Number of Judgeships | | 15 | 15 | 15 | 15 | 15 | 15 | | |
| | Vacant Judgeship Months** | | .0 | .0 | .0 | 3.1 | 17.1 | 27.4 | | |
| ACTIONS PER JUDGESHIP | FILINGS | Total | 197 | 226 | 208 | 231 | 225 | 225 | 91 | - |
| | | Civil | 159 | 180 | 163 | 184 | 179 | 197 | 86 | - |
| | | Criminal Felony | 25 | 30 | 32 | 35 | 34 | 28 | 92 | - |
| | | Supervised Release Hearings** | 13 | 16 | 13 | 12 | 12 | - | 73 | - |
| | Pending Cases | | 274 | 309 | 295 | 310 | 289 | 277 | 80 | - |
| | Weighted Filings** | | 239 | 272 | 261 | 280 | 271 | 284 | 88 | - |
| | Terminations | | 231 | 220 | 224 | 207 | 211 | 219 | 88 | - |
| | Trials Completed | | 7 | 10 | 15 | 15 | 12 | 12 | 93 | - |
| MEDIAN TIMES (months) | From Filing to Disposition | Criminal Felony | 14.4 | 12.9 | 12.8 | 10.2 | 9.6 | 7.7 | 90 | - |
| | | Civil** | 10.2 | 10.8 | 10.3 | 10.3 | 10.5 | 9.8 | 56 | - |
| | From Filing to Trial** (Civil Only) | | 37.0 | 35.0 | 27.4 | 25.0 | 29.0 | 24.0 | 74 | - |
| OTHER | Civil Cases Over 3 Years Old** | Number | 433 | 468 | 408 | 445 | 359 | 282 | | |
| | | Percentage | 15.1 | 14.1 | 12.8 | 12.7 | 11.1 | 8.6 | 83 | - |
| | Average Number of Felony Defendants Filed Per Case | | 1.4 | 1.5 | 1.5 | 1.3 | 1.4 | 1.3 | | |
| | Jurors | Avg. Present for Jury Selection | 70.60 | 86.63 | 75.49 | 85.69 | 93.32 | 69.99 | | |
| | | Percent Not Selected or Challenged | 47.2 | 53.6 | 50.4 | 56.6 | 55.7 | 51.9 | | |

| 2006 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
| Civil | 2382 | 22 | 35 | 491 | 28 | 21 | 135 | 228 | 209 | 42 | 514 | 61 | 596 |
| Criminal* | 367 | 1 | 106 | 12 | 63 | 78 | 20 | 10 | 2 | 13 | 5 | 26 | 31 |

\* Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings "By Nature of Offense" do not.
\*\* See "Explanation of Selected Terms."